IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 13, 2016


**TIMOTHY LAMONT THOMPSON v. STATE OF TENNESSEE**


**Appeal from the Criminal Court for Davidson County**
**No. 2010C1932     Steve R. Dozier, Judge**

_____


**No. M2015-00846-CCA-R3-PC – Filed February 9, 2016**

_____


Petitioner, Timothy Lamont Thompson, was convicted of aggravated robbery and aggravated assault after a jury trial. The trial court sentenced him as a repeat violent offender to life in prison without the possibility of parole and fifteen years, respectively. After an unsuccessful direct appeal process, petitioner filed a petition for post-conviction relief. The post-conviction court held an evidentiary hearing and denied relief thereafter. Appealing the denial of relief, petitioner raises the following allegations of ineffective assistance of counsel: (1) failure to request a second preliminary hearing or to explain why this was not possible; (2) failure to schedule a polygraph examination for petitioner; (3) failure to coordinate a physical line-up; (4) questioning petitioner's religious beliefs; and (5) failure to withdraw from petitioner's case upon request. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and TIMOTHY L. EASTER, J., joined.

Elaine Ann Heard, Nashville, Tennessee, for the Appellant, Timothy Lamont Thompson.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Glenn R. Funk, District Attorney General; and John Wesley King, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I. Facts and Procedural History**

**A. Facts from Trial**

As summarized by this court on direct appeal, this case concerns the April 15, 2010 robbery and assault of employees at the McDonald's restaurant on West End Avenue in Nashville, Tennessee. *State v. Timothy Lamont Thompson*, No. M2012-01151-CCA-R3-CD, 2013 WL 5873280, at *1 (Tenn. Crim. App. Oct. 30, 2013), *perm. app. denied* (Tenn. March 12, 2014). Petitioner brandished a firearm at the manager and ordered her to take him to the safe. *Id.* As he walked with her to the office, he also ordered another employee to accompany them. *Id.* The manager gave petitioner $700–$800 from the safe, and he ran outside. *Id.* Petitioner went to a hotel on West End Avenue where he changed clothes and hailed a taxicab. *Id.* The driver drove him to another area of Nashville. *Id.* Petitioner later went to Williamson County, Tennessee, to visit his daughter and her mother, Amelia Patterson. *Id.* Ms. Patterson recognized petitioner on the hotel surveillance video shown on the news that weekend. *Id.* Petitioner was arrested on April 20, 2010, in Williamson County, Tennessee. *Id.* A Davidson County grand jury indicted him for the aggravated robbery of the store manager and the aggravated assault of the employee. *Id.* Following a jury trial, he was convicted as charged. *Id.* The trial court sentenced him as a repeat violent offender to life without parole for the aggravated robbery conviction and as a career offender to a concurrent sentence of fifteen years for the aggravated assault conviction. *Id.*

**B. Procedural History**

Following the denial of relief on direct appeal, petitioner filed a *pro se* petition for post-conviction relief on July 17, 2014. Appointed counsel filed an amended petition on January 28, 2015. In the petition, post-conviction counsel alleged "that counsel was ineffective in formulating and executing [petitioner's] defense. Specifically, [petitioner] contends that [trial counsel] failed to consult with the petitioner at critical stages throughout the legal process." In slightly more detail, counsel averred that trial counsel "failed to consult with him at all stages of the trial process, as well as failed to call [sic] vigorously defend him including schedule a polygraph. Petitioner states he repeatedly asked [trial counsel] to prepare defenses and take actions[,] and [trial counsel] ignored him each time."

The post-conviction court held an evidentiary hearing on the petition and denied relief thereon. This appeal follows.

**II. Analysis**

-2-

Appealing from the denial of post-conviction relief, petitioner raises the following instances of alleged ineffective assistance of counsel: (1) trial counsel's failure to ensure petitioner's presence at the preliminary hearing, to request a second preliminary hearing that petitioner could attend, or to explain why this was not possible; (2) failing to schedule a polygraph examination for petitioner as per his request; (3) failing to coordinate a physical line-up; (4) questioning petitioner's religious beliefs; and (5) failing to withdraw from petitioner's case upon request despite petitioner's contacting the Board of Professional Responsibility.

## A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was

deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004) (citing *Strickland*, 466 U.S. at 697).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

## B. Issues

At the April 10, 2015 post-conviction evidentiary hearing, petitioner testified that he was convicted of aggravated robbery and aggravated assault. He was sentenced to life in prison without the possibility of parole for the robbery conviction and fifteen years for the assault conviction. He stated that trial counsel became involved in his case "a little

over a year" prior to his trial. A different attorney represented petitioner in general sessions court. Trial counsel visited petitioner three or four times in prison and discussed the State's evidence with him. Petitioner indicated that the State never submitted a settlement offer in his case.

Petitioner stated that trial counsel had the assistance of a "second chair" at trial and that she did "most of the talking and . . . represent[ed] him to the best of her abilities." However, petitioner complained that "she took a back seat" at trial.

Trial counsel testified that at the time of the evidentiary hearing, he had been an attorney for approximately nineteen years and had been employed by the District Public Defender's Office for the entirety of his practice. He undertook representation of petitioner's case when the assistant district public defender to whom the case was assigned left the office. His records reflected that he met with petitioner at the prison eight times in person, two times by video conference, and multiple times in court for hearing dates.

In this appeal, petitioner has abandoned his claims that trial counsel failed to adequately consult with him and/or keep him informed at all stages of the proceedings. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("[W]hile the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal"). Accordingly, those issues have not been addressed on appeal. Rather, he presents five new issues for our review.[1]

---

[1] None of the five issues that petitioner presented for the first time in this appeal are adequately supported by citations to authorities or appropriate references to the record. Tenn. R. App. P. 27(a)(7). While this court will treat as waived any issue that is not properly supported, *see* Rules of the Tennessee Court of Criminal Appeals 10(b), we will nonetheless address petitioner's claims on the merits because of the severity of his sentence(s) and the likelihood of further appellate review. We further note that precedent exists from this court allowing a petitioner to present an issue for the first time at a post-conviction evidentiary hearing, even if it was not listed in his petition, and still obtain appellate review of the issue. *See James Randall Roskam v. State*, No. M2014-00599-CCA-R3-PC, 2015 WL 3398394, at *6 (Tenn. Crim. App. May 27, 2015), *perm. app. denied* (Tenn. Sept. 17, 2015) (noting, before reviewing on the merits, that it did not appear that petitioner raised this specific issue in his post-conviction petition and that it was raised for the first time during the post-conviction hearing); *Kevin Allen Gentry v. State*, No. E2013-00791-CCA-R3-PC, 2014 WL 1883701, at *11 (Tenn. Crim. App. May 12, 2014) *perm. app. denied* (Tenn. Nov. 20, 2014); *Vincent Sims v. State*, No. W2008-02823-CCA-R3-PD, 2011 WL 334285, at *63 (Tenn. Crim. App. Jan. 28, 2011) (explaining that although the State claimed that the petitioner waived an issue by presenting it for the first time on appeal, because the issue was raised during post-conviction hearing testimony, this court will address it); *Jorge Ariel Sanjines v. State*, No. 03C01-9706-CR-00229, 1999 WL 41834, at *8 (Tenn. Crim. App. Feb. 2, 1999). *But see Torry Caldwell v. State*, No. 01C01-9703-CC-00115, 1999 WL 97915, at *2 (Tenn. Crim. App. Feb. 18, 1999) (reiterating that an issue not raised at the post-conviction evidentiary hearing will not be reviewed for the first time on appeal); *Michael J. Boyd v. State*, No. 02C01-9406-CR-00131, 1996 WL 75351, at *10 (Tenn. Crim.

### A. Failure to Request a Second Preliminary Hearing or to
### Explain Why This Was Not Possible

In his brief, petitioner states:

Specifically, the testimony showed that [petitioner] was not present for his preliminary hearing[ ] and that despite his multiple requests for [trial counsel] to advocate for a second chance at such a hearing, [trial counsel] failed to attempt it and also failed to explain why such a thing would not be possible.

Petitioner testified that he addressed his preliminary hearing with trial counsel. According to petitioner, the general sessions court held a preliminary hearing in his case, but he was not present and did not execute a waiver of his presence. When his case was transferred to criminal court, he wanted a preliminary hearing to "face his accusers." Even though trial counsel discussed trial strategy with petitioner, petitioner "would still bring up" his preliminary hearing. Petitioner said, "[Trial counsel] wanted to move forward, [and] I wanted to start back at the beginning of it . . . ."

Trial counsel recalled that petitioner was "very adamant" about wanting a second preliminary hearing but that he "just didn't see any legal basis, particularly since [petitioner] had been indicted, to have another preliminary hearing." Trial counsel believed "that the same purpose was served through a motions practice."

While not specifically addressing this issue, the post-conviction court accredited the testimony of trial counsel and did not find deficient performance or prejudice arising therefrom.

This issue is meritless. Tennessee Rule of Criminal Procedure 5(e) sets forth an accused's right to a preliminary hearing. The rule specifically contemplates that "a defendant arrested or served with a criminal summons *prior to indictment* . . . is entitled to a preliminary hearing." Tenn. R. Crim. P. 5(e). A preliminary hearing was held in general sessions court in this case, which resulted in petitioner's case being bound over to the grand jury and subsequently indicted. Petitioner has failed to demonstrate how counsel's conduct in failing to request a second preliminary hearing, to which he was *not* entitled, fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). Trial counsel's conduct was not deficient by failing to request a

App. Feb. 21, 1996) (noting that when an issue is raised for the first time on appeal *and* it was not presented at the post-conviction evidentiary hearing, it is waived).

second preliminary hearing.  Moreover, petitioner has failed to establish what, if any, different result would have been attained had he been given a second hearing, and thus, he has failed to establish prejudice.  He is not entitled to relief.

## B.  Failure to Schedule a Polygraph Examination

In his brief, petitioner states that "[t]he testimony showed that [petitioner] made repeated requests to [trial counsel] to organize a polygraph as a defense tool, and also to organize a physical lineup with the police, both requests [trial counsel] failed to accomplish or even attempt."

Petitioner testified that he asked trial counsel to arrange a polygraph examination for him but that trial counsel was "dead set" against this suggestion.

Trial counsel could not recall a specific conversation with petitioner about obtaining a polygraph examination.  He stated that it is a "pretty common" request from his clients.  Trial counsel indicated that a polygraph could be useful to the State or to petitioner from a "negotiation perspective" but that the results would be inadmissible in court.  He said that he would have informed petitioner as such and that he "would have at least approached the State about the possibility."

In denying relief on this claim, the post-conviction court wrote, "Trial counsel could not specifically recall if the petitioner requested a polygraph test, but the Court does not find that this constitutes deficient performance or caused prejudice."

"Simply stated, polygraph evidence is inadmissible."  *State v. Sexton*, 368 S.W.3d 371, 409 (Tenn. 2012) (citing *State v. Damron*, 151 S.W.3d 510, 515-16 (Tenn. 2004)). Our supreme court "has repeatedly held that the results of a polygraph examination are inherently unreliable."  *Id.* (citing *State v. Torres*, 82 S.W.3d 236, 252 n.20 (Tenn. 2002); *State v. Hartman*, 42 S.W.3d 44, 61-62 (Tenn. 2001)).  It is neither probative nor relevant.  *Id.*  (citing *Hartman*, 42 S.W.3d at 60; Tenn. R. Evid. 402; *United States v. Scheffer*, 523 U.S. 303, 309 n.5 (1998)).  While plausible that submitting to a polygraph examination could buttress one's negotiating position in attempting to secure a plea offer, that scenario is more than offset by the possibility that the State would gain more investigative information than it previously had.  We agree with the post-conviction court that trial counsel's failure to secure a polygraph examination for petitioner was neither deficient performance nor prejudicial to the defense.

## C.  Failing to Organize a Physical Line-up

In his brief, petitioner combined his argument with regard to this issue with that in subsection B, *supra*: "[t]he testimony showed that [petitioner] made repeated requests to

[trial counsel] to organize a polygraph as a defense tool, and also to organize a physical lineup with the police, both requests [trial counsel] failed to accomplish or even attempt."

Petitioner testified that he discussed with trial counsel his desire to participate in a physical line-up. He explained, "I read a little something about the line-ups[;] . . . when they do photo line-ups, they can also do physical line-ups." He said that trial counsel was "dead set" against this suggestion, also.

Trial counsel testified that the defense did not have a right to a physical line-up and that he filed a motion to suppress the identification of petitioner, which was denied. In further support of this issue, trial counsel presented an expert on the unreliability of eyewitness identifications as a witness at trial.

With regard to this issue, the post-conviction court wrote that "[t]rial counsel filed a motion to suppress the photographic lineup[,] and the trial court's denial of that motion was affirmed on appeal."

Petitioner has failed to direct this court to any authority that delineates his right to demand a physical line-up. He was identified through a photographic array. Trial counsel challenged the pre-trial identification through a motion to suppress, which was denied by the trial court. Trial counsel attempted to challenge the reliability of the identification by presenting an expert witness at trial to discuss cross-racial eyewitness identifications. Petitioner has failed to demonstrate deficient performance of counsel or ensuing prejudice. He is not entitled to relief.

## D. Questioning Petitioner's Religious Beliefs

In his brief, petitioner states that "[t]he testimony further showed that [trial counsel], during the preliminary stages of the trial, questioned the religion of [petitioner], which made [petitioner] uncomfortable and untrusting of [trial counsel's] dedication to his defense."

Petitioner explained that trial counsel "questioned his . . . religion" at the beginning stage of the attorney-client relationship.

With regard to this issue, trial counsel explained:

I respect anybody's right to believe in any sort of faith or background that they have. That has never been an issue at all for me in defending people. If that came up, and it very well may have, people who say, "I want a trial, I'm going to just put my faith in the Lord," that to me is not an adequate defense. It's sort of a common approach, but when people say that, I am

very quick to say, "[T]hat is very different than what we are talking about here."

It is[,] not to me, legitimate to say: "Look, well, I can have this trial, the Lord will protect me." I understand this is a sentiment or a feeling, but that is not, in my opinion, a legitimate reason to have a trial. And that is borne out just by experience quite frankly.

So I disabuse people of that notion as best I can. And if that is demeaning to an individual's faith, it's not at all meant to be that way . . . .

Trial counsel recalled that petitioner became upset because he believed that trial counsel was not respecting his beliefs as a Christian and that the conversation went "back and forth."

The State introduced into evidence a letter that petitioner wrote to the trial court in which petitioner complained that trial counsel "disrespected [him] by questioning [his] faith and belief in Jesus Christ[,] telling [petitioner] [he] shouldn't put all [his] trust in God but in [trial counsel]." Petitioner wrote that trial counsel "was very much wrong for saying such a thing like that."

While not specifically addressing this issue, the post-conviction court accredited the testimony of trial counsel and did not find deficient performance or prejudice arising therefrom.

Although it appears that petitioner was put-off by trial counsel's remarks to him, we glean that trial counsel was attempting to communicate that a sound defense strategy required more than faith. Despite trial counsel's statements being offensive to petitioner, there is no evidence in the record that trial counsel's performance was rendered deficient as a result. Neither did petitioner suffer prejudice. He is not entitled to relief.

E. Failure to Withdraw from Petitioner's Case upon Request

In his brief, petitioner states that "[t]he testimony showed that [petitioner's] multiple requests of [trial counsel] to withdraw, and despite his contacts to the Board of Professional Responsibility, [trial counsel] failed to attempt to withdraw from the case."

Petitioner requested that trial counsel withdraw from his case, but trial counsel chose to continue his representation. Petitioner consulted with the Board of Professional Responsibility but was informed that the board cannot remove an attorney from a case; only the judge could do that, and the trial judge refused to do so.

Trial counsel was aware that petitioner had written the board; the board corresponded with him and directed him to respond to petitioner within ten days. The trial court also advised trial counsel that petitioner had written a letter to him. Trial counsel said that he believed it to be incumbent upon him "to try to work through that with the client and address the situation." He posited:

> When somebody is unhappy, do I try to find a second chair that a person might be more comfortable with, absolutely. So yes, [associate counsel] was actively involved in [petitioner's] case. But I don't . . . as a team leader generally have clients make the decision as to who their attorney is.
>
> It is very, very disruptive to the office if [clients] say[,] ["] I don't like [trial counsel.] I would like Ms. X.["] So really, if somebody is going to be represented by our office, it's going to be by one of our attorneys[,] all of whom I think are capable.

We cannot say that trial counsel performed ineffectively in this regard. While petitioner was obviously dissatisfied with the personality differences he experienced with trial counsel, he was pleased with associate counsel, whom he characterized in his testimony as "doing most of the talking." Moreover, petitioner was not prejudiced by trial counsel's continuing to represent him. He is without relief as to this issue.

## CONCLUSION

Based on our review of the record, the briefs of the parties, and applicable legal authorities, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE